UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TASHA S.,[1]

                                 Plaintiff,                Case # 20-CV-421-FPG

v.                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

## INTRODUCTION

Plaintiff Tasha S. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In July 2016, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 89, 101. She alleged disability since June 2016 due to bipolar disorder, depression, anxiety, and pain in her back, feet and legs. Tr. 89-90, 101-02. In January 2019,

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

Administrative Law Judge Mary Mattimore ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 15-32. In February 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. If not, the ALJ

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity for some, but not all, of the period following her alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has severe impairments of obesity, degenerative disc disease of the lumbar spine with sciatica, neuralgia, and neuritis, peripheral neuropathy, lateral cutaneous femoral nerve of the thigh compression disorder with myalgia paresthesia, bipolar disorder, and panic disorder. Tr. 19. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any Listings impairment. Tr. 20.

Next, the ALJ determined that Plaintiff retains the RFC to perform sedentary work with additional limitations. Tr. 23. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 29. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 30-31. The ALJ therefore found that Plaintiff is not disabled. Tr. 31.

### II. Analysis

Plaintiff argues that remand is warranted on two grounds. First, she contends that the ALJ erred in giving more weight to the opinions of consultative examiners Gregory Fabiano, Ph.D., and Nikita Dave, M.D., than to the opinions of treating sources Colleen Lemankiewicz, PA-C, and Annmarie Kenny, NP. ECF No. 9-1 at 17-27. Second, she asserts that the ALJ failed to properly assess her subjective complaints. *Id.* at 27-30. On both points, the Court disagrees.

      a. **Opinion Evidence**

         i. **Mental Impairments**

In her decision, the ALJ accorded significant weight to the opinion of consultative psychologist Dr. Fabiano and little weight to the opinion of treating mental-health provider Annmarie Kenny, N.P. Tr. 27-28. Although she provided several reasons why she favored the former opinion over the latter, the ALJ generally believed that Dr. Fabiano's opinion was more consistent with the medical evidence. *See id.* Plaintiff challenges that premise, arguing that the ALJ cherry-picked and mischaracterized the evidence to reach that conclusion.

The Court will begin by summarizing the relevant mental-health evidence in the record. Plaintiff has a long history of treatment for bipolar and anxiety disorders. Tr. 752. In August 2016, Plaintiff went to the hospital complaining of recurrent chest pains and panic attacks. Tr. 354. In September 2016, she sought treatment at Lakeshore Behavioral Health, noting that she was not currently prescribed or taking any medication. Tr. 752. She reported anxiety, recent panic attacks, and increased manic episodes. *Id.* Plaintiff was prescribed medication and initiated into therapy. Tr. 757. In October 2016, Plaintiff reported no improvement in her mood and bouts of crying. Tr. 763. Plaintiff's medication was changed, Tr. 764, which resulted in no improvement over the next month. Tr. 765. Plaintiff was placed on lithium medication. Tr. 766. Two weeks later, Plaintiff reported a decrease in risky impulses, but continued to report bouts of depression and mania. Tr. 767. Her fiancée reported that Plaintiff was more predictable and stable with the new medication. *Id.* Treatment continued through fall and winter 2016. *See* Tr. 771-75.

By February 2017, Plaintiff reported that she had returned to work, was adhering to her prescription protocol, and was more stable, less depressed, and less irritable. Tr. 777. She denied having any manic episodes. *Id.* The treatment notes indicate that Plaintiff was calm, cooperative,

euthymic, logical, and had fair concentration and good insight. Tr. 777-78. In April 2017, Plaintiff discontinued her medication due to pregnancy. Tr. 779. She reported increasing depression, but her psychiatric exam showed that she was "[e]uthymic to mildly anxious" in mood, congruent and appropriate in affect, and "fair" in attention and concentration. Tr. 779-80. Over the next ten months, Plaintiff intermittently reported some depression and anxiety, *see* Tr. 781, 785, 787, but also reported doing "fine" to "very well," Tr. 783, 787, especially with the reintroduction of medication. Tr. 789. Plaintiff's psychiatric examinations during this period consistently indicated that she was euthymic to mildly anxious in mood, Tr. 781, 783, 785, 787, 789, and congruent and appropriate in affect, Tr. 781, 783, 785, 787, 789.

In March 2018, Plaintiff again stopped her medication due to another pregnancy, reporting that her anxiety and mood had been stable. Tr. 791. She stated that she was working "4 shifts part time" at "Rite Aid Pharmacy." *Id.* The next month, Plaintiff reported increasing depression and sadness, which she attributed to her lack of medication. Tr. 793. She also reported that she had been "taken out of work" due to "pain." *Id.* Her psychiatric examination did not deviate materially from prior exams. Tr. 793-94. In Late April 2018, Plaintiff reported feeling depressed "at times," with "low motivation." Tr. 795. She denied any manic symptoms and had no changes in her psychiatric examination. Tr. 795-96. In July 2018, Plaintiff reported being "a little down, sad and hopeless," along with anxiety and stress, Tr. 799, but in August and September 2018, she reported improvement in both her depression and anxiety with medication. Tr. 803, 805.

At the hearing, Plaintiff reported that her medications did not help her mental health. Tr. 59. She claimed she had significant depression to the point that she did not "want to get out of bed" and had started to "see things" in a manner consistent with schizophrenia. Tr. 64. She testified that she "hated" her medication because she had no energy. Tr. 65. Plaintiff stated that

she consistently missed work because she did not have enough energy, Tr. 70-71, and that she had difficulty managing the stress of interpersonal interactions and conflicts at work. Tr. 74. She testified that she continued to suffer from manic episodes.

Dr. Fabiano conducted his consultative psychiatric evaluation in October 2016—while Plaintiff was in the midst of a bout with mania. Tr. 379. At the evaluation, Plaintiff reported depression, panic attacks, and mania. Tr. 379-80. Dr. Fabiano's examination revealed that Plaintiff had adequate social skills, euthymic mood, appropriate affect, intact attention and concentration, intact memory skills, average cognitive functioning, and good insight. Tr. 382. He diagnosed Plaintiff with bipolar and panic disorders and opined that she had a "mild" limitation in her ability to make appropriate decisions and moderate limitations in her ability to relate with others and deal with stress. Tr. 381.

The ALJ gave significant weight to Dr. Fabiano's opinion. Tr. 27. She noted that Dr. Fabiano is an acceptable medical source with program knowledge and specialization in psychology; that his opinion was consistent with Plaintiff's mental-health treatment records; and that the opinion "consider[ed] [Plaintiff's] bipolar symptoms and how they impact her ability to socially interact." Tr. 27-28.

Kenny also completed a medical source statement on Plaintiff's behalf. Tr. 822-27. Kenny stated that Plaintiff suffered from bipolar disorder, generalized anxiety, and a panic disorder, Tr. 822, with a "fair to good" prognosis depending on "medication compliance." Tr. 822. Kenny believed that Plaintiff would have difficulty maintaining a consistent work schedule due to bouts of anxiety and panic attacks, and that she may have difficulty dealing with work stress and criticism from supervisors due to her depression and anxiety. Tr. 824. Kenny opined that Plaintiff would miss about "four days per month" due to her impairments. Tr. 826.

The ALJ gave little weight to Kenny's opinion. Tr. 28. The ALJ noted that Kenny is not an acceptable medical source and that her identified limitations do not correlate with the findings from the psychiatric examinations. Tr. 28. The ALJ also believed that Kenny's opinion was not consistent with Plaintiff's "own testimony regarding her wide-range of activities of daily living" and work activity. *Id.*

Plaintiff challenges the ALJ's evaluation of these opinions on four grounds. First, she argues that the ALJ cherry-picked favorable evidence and ignored unfavorable evidence in order to conclude that Plaintiff exhibited "grossly normal psychiatric findings upon examination." ECF No. 9-1 at 22-23. The ALJ also "failed to account for [Plaintiff's] cycles of improvement and debilitating symptoms." *Id.* at 24. The Court cannot agree with Plaintiff's characterization of the ALJ's findings.

In her decision, the ALJ did not ignore but explicitly acknowledged that Plaintiff suffered from serious mental impairments and that, at some of her appointments, she exhibited "depressed mood" and "feelings of stress." Tr. 21-22, 26-27. Nevertheless, the ALJ read the treatment notes as a whole to indicate "relatively benign mental status findings." Tr. 26. Given the Court's highly deferential review of the ALJ's factual findings, it cannot find the ALJ's reading of the record erroneous. As discussed above, Plaintiff's psychiatric examinations were consistent and fairly unremarkable. While Plaintiff intermittently reported bouts of depression and anxiety—and suffered from a more severe bout of mania in fall 2016—the exam findings do not swing so wildly as to compel the conclusion that Plaintiff deteriorated over time or suffered from cycles of "improvement and debilitating symptoms." ECF No. 9-1 at 24.

Instead, one could reasonably read the objective clinical findings and Plaintiff's subjective reports to suggest a generally consistent level of functioning with intermittent bouts of more

8

significant mental-health concerns. Plaintiff worked sporadically while engaging in mental-health treatment, did not report any manic episodes after early 2017, and stated that medication was often effective in controlling her symptoms. *See, e.g.*, Tr. 789, 797, 799, 803. The ALJ could reasonably conclude that, at appointments, Plaintiff generally presented in a manner inconsistent with the sort of decompensation or significantly impaired functioning that Plaintiff claimed at the hearing.

Because the ALJ's finding in this respect is reasonably supported by the record, it "must be given conclusive effect" even if "the administrative record may also adequately support contrary findings on particular issues." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ did not ignore or cherry-pick evidence, but rather acknowledged and resolved conflicts in the record to arrive at reasonable factual conclusions. The mere fact that Plaintiff can identify other evidence to support a different conclusion does not entitle her to relief. *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021). Furthermore, in light of her permissible findings on these issues, the ALJ could reasonably give more weight to Dr. Fabiano's opinion than to Kenny's.[4] *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Second, Plaintiff argues that, as a general matter, ALJs "should not rely heavily" on the opinions of consultative examiners. ECF No. 9-1 at 18. While there are often reasons to accord a consultative opinion less weight, an ALJ is not wholly barred from doing so if the evidence supports it. *See Ryder v. Comm'r of Soc. Sec.*, No. 18-CV-539, 2020 WL 5433459, at *4

---

[4] For the same reasons, the Court is not persuaded by Plaintiff's argument that Dr. Fabiano's opinion became stale due to Plaintiff's intervening mental-health treatment. ECF No. 9-1 at 18. The ALJ could reasonably conclude that Plaintiff's condition had not deteriorated after October 2016 and that, consequently, Dr. Fabiano's opinion "was not rendered stale by the passage of time." *Emery S.*, 2021 WL 2592363, at *4.

(W.D.N.Y. Sept. 10, 2020) ("[A] consultative physician's opinion may serve as substantial evidence in support of an ALJ's decision."). Plaintiff's broad attack on the value of consultative examiners fails.

Third, Plaintiff argues that the ALJ did not sufficiently explain why she found Dr. Fabiano's opinion more consistent with Plaintiff's treatment records. ECF No. 9-1 at 19. "[A]n ALJ's failure to fully express her reasoning does not justify remand so long as the Court can glean the rationale of the decision." *See Vacanti v. Comm'r of Soc. Sec.*, No. 18-CV-368, 2020 WL 836387, at *2 (W.D.N.Y. Feb. 20, 2020). As the preceding analysis makes clear, the Court can adequately glean the ALJ's rationale, and so any lack of explanation does not warrant remand.

Fourth, Plaintiff argues that Kenny's opinion was "entitled to extra consideration" because it was grounded in a "longitudinal treating relationship[]" and involved a "function-by-function" opinion. ECF No. 9-1 at 25. While those factors might weigh in favor of Kenny's opinion, the ALJ could nonetheless reject it insofar as it was inconsistent with the underlying treatment notes and record as a whole. *See Bryant v. Berryhill*, No. 16-CV-6109, 2017 WL 2334890, at *5 (W.D.N.Y. May 30, 2017) ("[A]n ALJ is entitled to discount a medical opinion that he or she finds inconsistent with the record as a whole.").

In sum, Plaintiff's arguments do not warrant remand.

### ii. Physical Impairments

Plaintiff also challenges the ALJ's decision to credit Dr. Dave's opinion over that of Lemankiewicz's, raising most of the same arguments that she does with respect to the mental-health opinions. For the same reasons, the Court is not persuaded that the identified errors merit remand.

At the hearing, Plaintiff testified that her physical impairments significantly limited her functional abilities. Plaintiff is 5'3" and at one point weighed 400-pounds. Tr. 24, 66. In December 2015, she received gastric sleeve surgery and lost 100 pounds. After the surgery, however, she developed back and leg pain. Tr. 67. Plaintiff described the pain as a "shocking" sensation that runs down her legs and radiates from her back. Tr. 67, 68. The pain can increase to a degree that her legs "give out" and she falls. Tr. 67. Plaintiff stated that this pain has worsened over time. *Id.* Plaintiff now uses a cane to ambulate, but even ordinary walking and standing causes the "shock." Tr. 68. Plaintiff testified that she can sit for, at most, thirty minutes before her back begins to hurt. Tr. 69.

The medical evidence is mixed concerning the extent of Plaintiff's physical impairments. The record corroborates Plaintiff's claim that she has complained of, and sought treatment for, her leg and back pain. *See, e.g.*, Tr. 298, 314. In her brief, Plaintiff cites treatment notes showing that, since her surgery, she has displayed "tenderness to palpation/myofascial pain," antalgic gait, "sensory decrease" in her thighs, decreased motor strength in her legs, pain during range-of-motion tests, weakness, and diminished reflexes. *See* ECF No. 9-1 at 21-22.

On the other hand, the ALJ noted contrary evidence showing that Plaintiff was prescribed "conservative treatment" for her pain and has had "grossly normal findings including normal rate and rhythm, gait, reflexes, sensation, and strength." Tr. 25-26; *see also* Tr. 283, 362, 373, 411, 421, 506, 819. Imaging showed only "mild degeneration" in the lumbar spine, Tr. 299, 817, and Plaintiff reported that injections provided temporary relief. Tr. 493. The ALJ also cited evidence that Plaintiff can walk without a cane and sometimes exhibits "poor effort" at her appointments. Tr. 26, 299, 386. At a June 2017 appointment, Plaintiff reported "lifting boxes at work," from which the ALJ inferred that Plaintiff has a "greater ability" than she alleges. Tr. 26. The ALJ also

11

noted that Plaintiff "reported and testified to the independent ability to engage in personal hygiene, prepare simple meals, engage in household chores, visit with friends and family, shop, use[] social media, handle finances, watch television, care [for] her infant children, and . . . [use] public transportation." Tr. 24.

In October 2016, Dr. Dave conducted an orthopedic examination of Plaintiff. Tr. 384-87. He observed that Plaintiff had a slightly antalgic gait but had normal station, and was able to rise from a chair and the exam table without difficulty. Tr. 386. After his examination, Dr. Dave opined that Plaintiff should avoid ladders and heights and was moderately limited in prolonged standing and walking and in repetitive crouching, kneeling, and crawling. Tr. 387.

The ALJ gave great weight to Dr. Dave's opinion. Tr. 28. She noted that he was an acceptable medical source with program knowledge who conducted a detailed examination. *Id.* She also found that his opinion was consistent with his clinical findings and the longitudinal treatment records. *Id.*

In November 2018, Lemankiewicz completed a medical source statement. Tr. 810-13. Lemankiewicz opined that Plaintiff has leg weakness, as well as pain and numbness that limited her in significant ways: she could sit and stand/walk less than two hours each workday, could stand for five minutes at one time, could never lift ten pounds, and would be absent more than four days per month. *Id.*

The ALJ gave limited weight to Lemankiewicz's opinion. The ALJ noted that Lemankiewicz is not an acceptable medical source; that her opinion was inconsistent with Plaintiff's daily activities, work activity, and the treatment record; and that Lemankiewicz "appears [to have] given deference to [Plaintiff's] self-reported limitations and symptoms[] and is sympathetic to [her] application for disability." Tr. 28.

For the same reasons just discussed, Plaintiff's challenges to the ALJ's reasoning fail.  The ALJ did not, as Plaintiff alleges, ignore or cherry-pick evidence.  *See* ECF No. 9-1 at 21-22.  She acknowledged the evidence supporting Plaintiff's claimed restrictions, and she ultimately agreed that Plaintiff was significantly limited in her physical abilities.  Tr. 25-26.  Nevertheless, the ALJ also noted the variety of evidence that undercut Plaintiff's claimed restrictions.  Tr. 24-28.  Having identified a conflict in the record concerning the severity of Plaintiff's physical impairments, the ALJ reasonably resolved that conflict against Plaintiff, particularly in light of Plaintiff's undisputed work activity and her inconsistent and often normal presentation at appointments.  Plaintiff cannot obtain remand merely because some evidence supports her position.  *See Emery S.*, 2021 WL 2592363, at *4.

Furthermore, as already discussed, the ALJ was free to credit a consultative examiner over a nonacceptable treating source; the ALJ's decision is not infirm for lack of a sufficient explanation; and the ALJ was not compelled to accept Lemankiewicz's opinion since she was a treating source.[5]  *See* ECF No. 9-1 at 18-26; Section II(a)(i), *supra*.  Therefore, remand is not warranted.

### b. Subjective Complaints of Pain

Next, Plaintiff argues that the ALJ erroneously discounted her subjective complaints of pain.  ECF No. 9-1 at 27-30.  The Court is not convinced.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective

---

[5] Plaintiff also criticizes the ALJ's decision to accord less weight to Lemankiewicz's opinion less weight because Lemankiewicz was "sympathetic" to Plaintiff.  *See* ECF No. 9-1 at 26.  Even if the ALJ erred in this respect, the error is harmless because the ALJ provided other good reasons for rejecting Lemankiewicz's opinion.  *See Erica M. v. Saul*, No. 18-CV-456, 2019 WL 4257165, at *10 (N.D.N.Y. Sept. 9, 2019) (erroneous reason for discounting opinion harmless where the ALJ provided "other good reasons" for doing so).

complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted). "The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). "That requirement stems from the fact that subjective assertions of pain *alone* cannot ground a finding of disability. If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (internal quotation marks, citations, and brackets omitted). The ALJ must consider several other factors when making a credibility assessment, including the claimant's daily activities. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Jackson v. Astrue*, No. 05-CV-1061, 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (internal quotation marks and citation omitted).

Plaintiff argues that, for two reasons, the ALJ erred in conducting this analysis.

First, Plaintiff asserts that, in discussing her daily and work activities, the ALJ failed to articulate how any of those activities "were comparable to full-time competitive work." ECF No. 9-1 at 27. The ALJ had no obligation to do so, however. While activities of daily living may not "definitively *prove* [a claimant's] ability to work," an ALJ can "permissibly consider [them] as one factor among many in evaluating the consistency of [the claimant's] subjective complaints with the record as a whole." *Chelsea V. v. Comm'r of Soc. Sec.*, No. 20-CV-501, 2021 WL

2649650, at *6 (W.D.N.Y. June 28, 2021); *see also* 20 C.F.R. § 404.1529(c)(3)(i).  Thus, even if Plaintiff's daily activities were not "comparable to full-time competitive work," ECF No. 9-1 at 27, the ALJ could reasonably consider them in assessing whether Plaintiff was as debilitated by pain as she claimed.[6]

Second, Plaintiff also criticizes the "negative inferences" that the ALJ drew "from Plaintiff's struggles with medication compliance."  ECF No. 9-1 at 28.  In her decision, the ALJ stated that there was "evidence of non-compliance in the record," which demonstrated Plaintiff's "possible unwillingness to do what is necessary to improve [her] conditions" and "may also be an indication that the symptoms are not as severe as purported."  Tr. 25.  Plaintiff argues that her medication non-compliance was a function of her bipolar disorder.  ECF No. 9-1 at 28-30.  Regardless, even if the ALJ's analysis were erroneous, it would be harmless because the ALJ otherwise "employed the proper standards and considered a wide body of evidence in assessing Plaintiff's subjective complaints," *Cynthia M. v. Comm'r of Soc. Sec.*, No. 20-CV-711, 2021 WL 3052008, at *6 (W.D.N.Y. July 20, 2021) (collecting cases), including her presentation at appointments, her work activities, her daily activities, the extent of treatment, and the medical record.  20 C.F.R. § 404.1529(c)(3).

Accordingly, Plaintiff's arguments do not warrant remand.

---

[6] Plaintiff also contends that the ALJ "ignored" her testimony that "she required a great deal of assistance during her typical day in caring for herself and her children, she did not care for her children by herself, and at times her mental health made her obsess about her children's well-being." ECF No. 9-1 at 28. As a general matter, an ALJ is not "required to mention or address every piece of evidence presented." *Katrina M. v. Comm'r of Soc. Sec.*, No. 19-CV-6777, 2021 WL 508090, at *4 (W.D.N.Y. Feb. 11, 2021). More to the point, the Court does not read the ALJ's summary of Plaintiff's testimony to be a mischaracterization of her abilities. Plaintiff claimed that her impairments limited her functional abilities to the point that she would "just stay in bed" and "not be able to deal with the day." Tr. 65. The ALJ could reasonably consider Plaintiff's daily activities—as limited as they were—in assessing whether her claims were fully worthy of credence; the ALJ's decision does not suggest that the ALJ exaggerated the probative value of Plaintiff's daily activities.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED.  The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 3, 2021
       Rochester, New York

                                  HON. FRANK P. GERACI, JR.
                                  United States District Judge
                                  Western District of New York